**ALLSTATE INSURANCE COMPANY,**
Plaintiff–Appellee,

v.

Thomas H. JUNIEL and Vernón E. Green, Defendants–Appellants.

No. 95CA0471.

Colorado Court of Appeals, Div. IV.

July 11, 1996.

Rehearing Denied Aug. 8, 1996.

Certiorari Denied Feb. 18, 1997.

Holland & Hart, Brian Muldoon, Steven C. Choquette, Denver, for Plaintiff–Appellee.

Fogel, Keating & Wagner, P.C., William L. Keating, Steven R. Polidori, Kristin D. Sanko, Denver, DiManna & Jackson, Gary M. Jackson, Denver, Breit, Bosch, Levin & Coppola, P.C., John L. Breit, Bradley A. Levin, Denver, for Defendants–Appellants.

Opinion by Judge DAVIDSON.

In this action for declaratory relief regarding the criminal acts exclusion clause of an insurance policy, defendants, Thomas H. Juniel (insured) and Vernon E. Green (neighbor), appeal from a judgment of the trial court ruling that plaintiff, Allstate Insurance Co. (insurer), had no duty to defend or indemnify the insured. We affirm.

Unsatisfied after confronting a neighbor who was shooting fireworks into his yard, the insured went into his house, retrieved a handgun with a loaded clip, hid the gun in the waistband of his pants, and returned outside. After he again confronted his neighbor about the fireworks, the neighbor approached insured in a threatening manner. Insured then drew the gun, loaded a round into the chamber, and pointed it at the ground. In an attempt to grab the gun from the insured, the neighbor was seriously injured when the gun discharged.

Insured pled guilty to second degree felony assault and misdemeanor menacing. *See* §§ 18-3-203 & 18-3-206, C.R.S. (1986 Repl. Vol. 8B). Neighbor subsequently sued insured for recklessly and negligently causing him physical injury, specifically citing these two crimes in his complaint. Insurer refused to pay or to defend insured in the suit and sought a declaratory judgment to define its obligations under insured's homeowner's policy. As pertinent here, neighbor and insured stipulated to a judgment in favor of neighbor and insured agreed to litigate this action with insurer.

On cross-motions for summary judgment, the trial court ruled that the criminal exclusion clause was unambiguous, not void as against public policy, and, consequently, that insurer had no duty either to defend or to indemnify the insured.

I.

On appeal, defendants contend that the trial court's ruling is in error. Defendants assert that the policy's criminal acts exclusion does not exclude neighbor's injuries from coverage because the clause is ambiguous and, if interpreted as they suggest, neighbor's injuries would be within the terms of policy coverage. We disagree.

[redacted] An insurer's duty to defend arises from allegations in the complaint which, if sustained, would impose upon the insured liability within the policy coverage. Whether coverage is ultimately available under the policy is a question of fact for the trier of fact. But, since the duty to defend is broader than the duty to indemnify, *see Hecla Mining Co. v. New Hampshire Insurance Co.*, 811 P.2d 1083 (Colo.1991), there is no liability if there is no duty to defend. Thus, insurer has no duty either to defend or to indemnify if insurer can establish that the factual allegations in the complaint reveal a situation that is solely and entirely within an exclusion in the insurance policy, and that the exclusion is not subject to any other reasonable interpretation. *Hecla Mining Co. v. New Hampshire Insurance Co., supra.*

Here, the coverage grant clause of insured's homeowner's policy provides that:

> Subject to the terms, limitations and conditions of this policy, [insurer] will pay damages which an insured person becomes legally obligated to pay because of bodily injury or property damage arising from an accident and covered by this part of the policy.

The criminal acts exclusion provides:

> We do not cover bodily injury or property damage resulting from:
>
> (a) A criminal act or omission.

A.

[redacted] First, defendants argue, the criminal acts exclusion is ambiguous because the term "criminal acts" is susceptible to more than one interpretation. Defendants assert that the term could fairly be interpreted to mean either acts which are crimes under the relevant criminal code or, alternatively, acts that the general population considers to be "criminal" in nature. However, if we assume that "criminal acts" could, in the abstract, be interpreted in more than one way, such a potential does not create an ambiguity here.

[redacted] When a policy does not define a term such as "criminal acts," interpretation of that term is dependent on whether the phrase is used ambiguously in the context of the policy's exclusionary clause. However, although a term used in a contract is ambiguous when it is susceptible to more than one reasonable interpretation, *Hecla Mining Co. v. New Hampshire Insurance Co., supra,* a mere potential for more than one interpretation of such term considered in the abstract, does not create an ambiguity.

[redacted] To the contrary, whether a policy term is ambiguous is not determined in a vacuum, but by use of an objective standard within the context of circumstances at issue. *Regional Bank of Colorado v. St. Paul Fire & Marine Insurance Co.*, 35 F.3d 494 (10th Cir.1994) (applying Colorado law). That is, terms are construed "as they would be understood by a person of ordinary intelligence," *State Farm Mutual Auto. Insurance Co. v. Nissen,* 851 P.2d 165, 167 (Colo.1993); *see also* L. Russ, *Couch on Insurance 3D* § 22.38 at 22-83 (1995) (terms of insurance

contract given meaning of "reasonably intelligent person"), evaluating policy language and the factual circumstances to which the terms are applied. *See American Family Mutual Insurance Co. v. Johnson,* 816 P.2d 952 (Colo.1991) (interpreting intentional injury exclusion); *see also Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Insurance Co.,* 5 Cal.4th 854, 21 Cal.Rptr.2d 691, 855 P.2d 1263 (1993) (in malpractice policy ambiguity is not determined in the abstract or in some hypothetical circumstance); *Youngwirth v. State Farm Mutual Auto. Insurance Co.,* 258 Iowa 974, 140 N.W.2d 881 (1966) (ambiguity is a relative term; single term may be ambiguous under one factual situation and unambiguous when applied to another).

▆▆ Hence, the fact that "terms of a policy of insurance may be construed as ambiguous where applied to one set of facts does not make them ambiguous as to other facts which come directly within the purview of such terms." L. Russ, *Couch on Insurance 3D* § 21.14 at 21–26 (1995); *see American Family Mutual Insurance Co. v. Johnson, supra* (holding that identical intentional acts exclusion language interpreted in *Chacon v. American Family Mutual Insurance Co.,* 788 P.2d 748 (Colo.1990), was not controlling under different circumstances).

Here, insured argues, "criminal acts" might be variously interpreted, for example, as statutorily defined crimes or as actions of a "criminal nature" as regionally perceived. Even so, considering the conduct at issue in this case—assault and menacing—we conclude that any "objectively reasonable" interpretation of "criminal acts" would exclude insured's actions from coverage under the policy. Thus, the term "criminal acts" is unambiguous under the circumstances at issue in which injuries were sustained as the result of insured's recklessly drawing a loaded gun on a neighbor.

Indeed, a variety of jurisdictions have found identical or substantially similar criminal acts exclusion language to be unambiguous under the particular circumstances at issue. *See Castro v. Allstate Insurance Co.,* 855 F.Supp. 1152 (S.D.Cal.1994) (unqualified exclusion for criminal acts unambiguous as to first degree murder); *Horace Mann Insurance Co. v. Drury,* 213 Ga.App. 321, 445 S.E.2d 272 (1994) (criminal act exclusion unambiguous in its applicability to illegal firecracker possession); *Ideal Mutual Insurance Co. v. Winker,* 319 N.W.2d 289 (Iowa 1982) ("resulting from a criminal act" unambiguous in excluding coverage for first degree murder); *New Mexico Physicians Mutual Liability Co. v. LaMure,* 116 N.M. 92, 860 P.2d 734 (1993) (criminal acts exclusion in malpractice policy subject to only one interpretation where act was violent felony).

### B.

▆▆ Alternatively, defendants maintain that the policy is ambiguous when the criminal acts exclusion, as written, is read in conjunction with the coverage grant clause of the policy, which provides that insurer will pay damages for injuries "arising from an accident." Specifically, defendants argue, in order to give effect to the coverage grant clause, the criminal acts exclusion should be narrowly interpreted to exclude only "injuries which the insured *either intended or reasonably expected to result from* criminal acts." This interpretation, defendants assert, would mean that neighbor's injuries, resulting from one of the parties "accidentally" pulling the trigger during a scuffle for the gun, would be within the policy's coverage. We disagree.

### 1.

First, the policy is not ambiguous when the coverage grant and exclusion clause are read together.

Contrary to defendants' contention, the exclusion clause does not conflict directly with the coverage grant clause. The grant clause of insured's homeowners' policy explicitly provides that payment of damages arising from an accident is subject to "terms, limitations and conditions of this policy." Thus, the policy is clear that not all injuries arising from accidents will be covered.

Secondly, in the insurance context, the language of the exclusion—"injuries resulting from [an action]"—has been interpreted as meaning injuries "caused by or contributed

to" by the action, regardless whether the party causing the injuries either intended to cause injury or even knew how the accident which caused the injuries occurred. *Ackerman v. Hilton's Mechanical Men, Inc.* 914 P.2d 524 (Colo.App.1996) (interpreting workers' compensation benefit reduction for injuries resulting from intoxication).

Further, if the policy was intended to qualify this general meaning such that only reasonably expected or intentional injuries would be excluded, the clause could have explicitly so stated. *See Butler v. Behaeghe,* 37 Colo.App. 282, 548 P.2d 934 (1976) (interpreting phrase "bodily injury intended or expected").

■ Courts cannot, however, rewrite an unambiguous insurance contract or "torture the unambiguous language of the exclusion provision in order to create an intent requirement." *Broderick Investment Co. v. Hartford Accident & Indemnity Co.,* 954 F.2d 601, 607 (10th Cir.1992), *cert. denied,* 506 U.S. 865, 113 S.Ct. 189, 121 L.Ed.2d 133 (1992) (where policy excludes coverage of "intended discharge" court will not infer that injury must also be intended); *see also Federal Deposit Insurance Corp. v. American Casualty Co.,* 843 P.2d 1285 (Colo.1992); *compare Allstate Insurance Co. v. Brown,* 16 F.3d 222 (7th Cir.1994) (clause explicitly excluded only "reasonably expected" injuries) *and Allstate Insurance Co. v. Barnett,* 816 F.Supp. 492 (S.D.Ind.1993) (clause explicitly excluded "reasonably expected" injuries) *with Castro v. Allstate Insurance Co., supra* (clause excluded all injuries "resulting from").

In addition, defendants' proposal to qualify the exclusion with the term "intentional" would make the exclusion partially redundant of another policy exclusion—the intentional acts exclusion. *See Pepcol Manufacturing Co. v. Denver Union Corp.,* 687 P.2d 1310 (Colo.1984) (in interpreting a clause, the court must attempt to harmonize and give effect to all provisions so that none will be rendered meaningless); *see also Cheyenne Mountain School District # 12 v. Thompson,* 861 P.2d 711 (Colo.1993); *cf. Hooper v. Allstate Insurance Co.,* 571 So.2d 1001 (Ala. 1990) (for clause excluding coverage of inju-

ries reasonably expected to occur from "intentional or criminal acts," the term "criminal acts" is not modified by any culpability requirement; citing similar cases from Florida, Nevada, California, Alaska, New Jersey, and Oregon).

Moreover, courts of various jurisdictions support the trial court's determination that a generally worded criminal exclusion, as here, eliminates from coverage more than just intentional crimes or injuries intended or reasonably expected. *See Liebenstein v. Allstate Insurance Co.,* 517 N.W.2d 73 (Minn.Ct. App.1994) (exclusion for damages resulting from criminal act applied to accidental, unintended injury to police officer by detainee resisting arrest); *Allstate Insurance Co. v. Barnett, supra* (intent not a prerequisite of criminal exclusion where intentional injuries are separately excluded); *Allstate Insurance Co. v. Norris,* 795 F.Supp. 272 (S.D.Ind.1992) (general criminal act exclusion); *Allstate Insurance Co. v. Sowers,* 97 Or.App. 658, 776 P.2d 1322 (1989) (policy excluding damages "reasonably expected to result from intentional or criminal acts" barred coverage for injury resulting from resisting an arrest even though injury was unintended).

Because we perceive no conflict between the clauses that produces an ambiguity, the exclusion clause need not be qualified, as defendants suggest, by anyone's subjective intent or reasonable expectations. *See Castro v. Allstate Insurance Co., supra* (absence of qualification clarifies rather than obscures the scope of the exclusion); *Podiatry Insurance Co. v. Isham,* 65 Wash.App. 266, 828 P.2d 59, 62 (1992) (holding exclusionary clause not ambiguous because clause "interpreted in the context of the entire policy is not fairly susceptible to more than one reasonable interpretation").

■ The rule that "contracts of insurance are to be strictly construed in favor of the insured ... applies only when there is, in fact, a need to construe the contract." L. Russ, *Couch on Insurance 3D* § 21.11 at 21–19 (1995). Hence, while ambiguous language must be construed in favor of the insured and against the insurer who drafted the policy, *see Hecla Mining Co. v. New Hampshire*

*Insurance Co., supra,* "courts will not force an ambiguity in order to resolve it against an insurer." *Martinez v. Hawkeye–Security Insurance Co.,* 195 Colo. 184, 188, 576 P.2d 1017, 1019 (Colo.1978).

### 2.

■■■ Further, to the extent that defendants argue that the exclusion clause would violate public policy if it were not interpreted narrowly as they suggest, we also disagree.

■■■ An unambiguous clause may be void and unenforceable if it violates public policy by attempting to "dilute, condition, or limit statutorily mandated coverage." *Farmers Insurance Exchange v. Dotson,* 913 P.2d 27, 30 (Colo.1996) (finding exclusion violative of public policy as expressed in No–Fault Act). Here, however, there is no statute which either explicitly or implicitly proscribes the type of clause at issue.

■■■ Furthermore, while public policy may also be derived from legal precedent, *see Federal Deposit Insurance Corp. v. Bowen,* 824 P.2d 41 (Colo.App.1991), *rev'd on other grounds, Federal Deposit Insurance Corp. v. American Casualty Co.,* 843 P.2d 1285 (Colo. 1992), Colorado courts have not found criminal acts exclusions to violate public policy. And, indeed, other jurisdictions have determined that a general criminal exclusion clause does not, *per se,* violate public policy. *See Nash v. Durapau,* 592 So.2d 504 (La. App.1991) (clause excluding damages resulting from criminal act does not violate public policy); *Allstate v. Norris, supra* (general criminal exclusion clause not violative of public policy although clause interpreted to exclude unintentional injuries); *New Mexico Physicians Mutual Liability Co. v. LaMure, supra* (sexual assault falls within criminal act exclusion, supports public policy of refusing to indemnify an insured for an intentional wrong); *Podiatry Insurance Co. v. Isham, supra* (no assertion that malpractice policy, excluding injuries due to "violation of any law or ordinance," was contrary to public policy).

Here, we perceive no violation of public policy because, as discussed, the policy's coverage grant and exclusion clause are consistent, and the criminal act exclusion does not eviscerate the grant clause, but merely excludes a reasonable subset of injuries—those resulting from criminal acts. *See Allstate Indemnity Co. v. Gonzales,* 902 P.2d 953 (Colo.App.1995) (policy can exclude motorcycles; even when a statute does establish public policy, an exclusion is not necessarily void as against public policy simply because it narrows the circumstances under which coverage applies); *New Mexico Physicians' Mutual Liability Co. v. LaMure, supra,* 860 P.2d at 737 (exclusion valid when it is "not so broad or nebulous that it swallows and effectively nullifies a broad insuring clause").

### II.

■■■ And finally, we perceive no error in the trial court's exclusion of extrinsic evidence proffered to establish that either the criminal exclusion clause or the policy as a whole was ambiguous.

■■■ Although a court may conditionally admit extrinsic evidence such as evidence of local usage to determine whether a clause is ambiguous, *see Pepcol Manufacturing Co. v. Denver Union Corp., supra,* the court may not consider the parties' own extrinsic expressions of intent. *K N Energy, Inc. v. Great Western Sugar Co.,* 698 P.2d 769 (Colo. 1985), *cert. denied,* 472 U.S. 1022, 105 S.Ct. 3489, 87 L.Ed.2d 623 (1985). Further, terms of a policy are to be interpreted as understood by an ordinary person, not by one engaged in the insurance business. 13 J. Appleman, *Insurance Law & Practice* § 7386 (1976). Consequently, here, the trial court properly excluded extrinsic evidence which consisted of depositions, insurer's internal memoranda, and communications with insurance officials.

Because the trial court properly found that insurer had no duty to defend and no liability under the policy, we need not address defendants' other contentions.

The judgment is affirmed.

STERNBERG, C.J., and BRIGGS, J., concur.